Alex R. Straus (SBN 321366)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN LLP**
280 S. Beverly Drive, PH Suite
Beverly Hills, CA 90212
(866) 252-0878 (phone)
(615) 921-6501 (fax)
astraus@milberg.com

*Attorneys for Plaintiffs and Putative Classes*
*Other Counsel on Signature Page*

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD BROWN, RYAN VARZANDEH, and VAUGHN ROGERS, individually and on behalf of all others similarly situated,<br><br>                         Plaintiffs,<br><br>        v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>                         Defendant. | Case No. 3:24-cv-9505<br><br>**CLASS ACTION COMPLAINT**<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Todd Brown, Vaughn Rogers, and Ryan Varzandeh (collectively, "Plaintiffs") bring this Class Action Complaint against Defendant Uber Technologies, Inc. ("Defendant" or "Uber"), individually and on behalf of all others similarly situated, and complain and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

### **INTRODUCTION**

1.      Defendant owns and operates Uber Eats, a food delivery service that allows consumers to place digital delivery orders from local restaurants through a mobile app (the "Uber Eats App").

2.      Uber Eats primarily functions as a third-party delivery service, utilizing a network

of independent contractors to deliver food orders to consumers for a fee.

3.    Uber Eats also offers a subscription service called "Uber One," where its members ("Members") receive discounts in exchange for a monthly subscription fee.

4.    The most promoted benefit for Uber One Members is "$0 Delivery Fee" on eligible Uber Eats orders. Reasonable consumers understand this offer to mean that Uber Eats will not charge Members a fee for the delivery of their food order.

5.    However, in direct contradiction to its affirmative representations, Uber One Members who attempt to utilize the "$0 Delivery Fee" benefit are charged numerous hidden delivery fees.

6.    These fees are actively concealed and deceptively labeled such that they are unlikely to be discovered by reasonable consumers prior to their purchase.

7.    As a result of this misconduct, millions of Uber One Members have paid deceptively charged delivery fees, despite their reasonable belief that they would receive free delivery services. Additionally, millions of Uber One Members have paid subscription fees in exchange for benefits that Defendant never intended to provide.

8.    Uber's misconduct has caused Plaintiffs and putative Class Members to suffer injury in fact, including economic damages. Accordingly, Plaintiffs bring this suit to halt Uber's unfair and deceptive trade practices.

9.    Plaintiffs seek damages, injunctive relief, and other equitable remedies for themselves and the proposed classes.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more putative Class Members; (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (iii) there is minimal diversity because at least one Plaintiff and Defendant are citizens of different states. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

11.     This Court has personal jurisdiction over Defendant because Defendant has substantial aggregate contacts with this District, including engaging in conduct that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed themselves of the laws of the United States and the State of California.

12.     In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, Defendant maintains its corporate headquarters in this District, and Defendant has intentionally availed itself of the laws and markets within this District.

## DIVISIONAL ASSIGNMENT

13.     The conduct that gives rise to this civil action occurred in San Francisco County, where Defendant maintains its corporate headquarters. Accordingly, pursuant to Civil Local Rule 3-2(d), this action can be assigned to the Oakland Division or San Francisco Division.

## PARTIES

14.     At all relevant times, Plaintiff Todd Brown has resided in Los Angeles County, California.

15.     At all relevant times, Plaintiff Ryan Varzandeh has resided in Los Angeles County, California.

16.     At all relevant times, Plaintiff Vaughn Rogers has resided in New York County, New York.

17.     Defendant Uber Technologies, Inc. is a Delaware limited liability company with its principal place of business in San Francisco, California.

## FACTUAL ALLEGATIONS

***Uber Eats' Business Model***

18.     The Uber Eats platform was first launched in 2015, providing food delivery to consumers via its Uber Eats App.

19.     In its own words, "Uber Eats is the easy way to get the food you love delivered."

The Uber Eats App allows users to browse restaurants, order, and track delivery. The following description of the service appears on the Uber Eats website[1]:



## How to use the Uber Eats app





**Browse**

Uber Eats has hundreds of restaurants to choose from. When you open the app, you can scroll through for inspiration or search for a particular restaurant or cuisine. When you find something you like, tap to add it to your order.

**Order**

When you're ready to check out, you'll see your address, an estimated delivery time, and the price of the order including tax and delivery fee. When everything looks right, just tap **Place order**—and that's it. You can use the same payment methods you use on Uber trips.

**Track**

Follow your order in the app. First you'll see the restaurant accept and start prepping. Then, when the order's almost ready, a nearby delivery person—in a car, on a bike, or on a scooter—will go to the restaurant to pick it up. Next, they'll drive or ride to you. You'll be able to see their name and photo and track their progress on the map.

20.     Based on information and belief, Defendant owns and controls the Uber Eats App and all of its associated intellectual property.

21.     Customers are all exposed to a substantially similar, if not identical, version of the Uber Eats App and its user interface.

---

[1] https://about.ubereats.com/

22.    Uber is not an employee of any restaurant. Rather, Uber charges a commission to the restaurants that choose to participate in its delivery services. The amount of the commission is between 15–30% of the total order value, depending on the restaurant's plan.

23.    Consumers typically pay for Uber Eats' services through delivery fees assessed on their food order, which vary based on factors such as geographic location and order size.

**Uber One**

24.    Uber also offers a paid subscription program called Uber One, which provides specific benefits and discounts to Members,[2] including its primary benefit for Uber Eats users: free delivery on eligible orders.

25.    Uber One membership has grown dramatically in recent years. At present, there are more than 25 million members.

26.    Members are charged a monthly fee of $9.99, resulting in hundreds of millions of dollars to Defendant in predictable monthly revenue.

27.    It is therefore no surprise that Defendant advertises Uber One membership extensively, showing the "potential savings" to consumers making purchases on Uber Eats without a membership and offering free trials:



---

[2] Uber One membership provides discounts for both the Uber Eats App and the Uber rideshare services app. For purposes of this complaint, Plaintiffs' allegations are limited to Defendant's actions with regard to its Uber Eats business.

***The $0 Delivery Fee Benefit***

28.    The most valuable benefit for Uber One Members—and the one most publicized by Defendant in its promotion of the Uber One program—is the "$0 Delivery Fee" on qualifying orders.[3]

29.    For example, on the Uber Eats website, the following advertisement for Uber One appears[4]:



30.    Furthermore, the description provided by Defendant highlights the "$0 Delivery

---

[3] Notably, only businesses which subscribe to "Plus" or "Premium" levels of Uber Eats (i.e., pay a minimum commission of 25% per order) are eligible to be included in the Uber One promotions. "Lite" subscribers, who pay a 15% commission, cannot participate. It is reasonable to conclude that the higher commission rates more than offset Uber Eats' costs of offering the promotions.

[4] https://www.ubereats.com/uber-one?srsltid=AfmBOopS8DMsK1oPKHXR-W9booD89UfwPCXEFE6UtRey342L4BBC2Lc1

Fee" as its primary benefit[5]:



What is Uber One?

Uber One is a subscription option which gives you access to benefits such as savings on Uber and Uber Eats.

There are monthly memberships available for $9.99 and annual memberships at $96. Uber One also has partnerships with third parties that offer a discounted membership to eligible users.

Uber One members receive a $0 Delivery Fee plus up to 10% off eligible orders on restaurants and stores marked with the Uber One icon.

Eligible stores will have a gold Uber One icon underneath their names. $15 minimum order to receive $0 Delivery Fee and Up to 10% off from participating non-grocery stores, and $35 minimum on participating grocery stores for $0 Delivery Fee and 5% off.

They'll also get member pricing on eligible rides. Look for the Uber One icon to see where your benefits apply.

Taxes and fees, if applicable, do not apply to order minimums. Membership savings are applied as a reduction to service fees. Other fees and exclusions may apply.

31.     Consumers reasonably understand the "$0 Delivery Fee" benefit to mean that they will not be charged any delivery fees on their order. This understanding is made all the more reasonable given that Members are paying a monthly subscription fee to obtain this benefit.

32.     Although the "$0 Delivery Fee" language is unambiguous, Uber imposes numerous hidden charges which are, by its own admission, delivery fees.

33.     For example, Uber recently offered "$0 Delivery Fee on $15+" for Members ordering from Dunkin:

---

[5] https://www.uber.com/us/en/u/uber-one/

CLASS ACTION COMPLAINT



34.     If a Member were to take advantage of the promotion pictured above, they would see the following "subtotal" screen:



35.     Nowhere on the subtotal screen are additional fees disclosed; rather, Uber highlights the Member's savings in an attempt to distract them from the true costs of its services.

36.     It is not until the Member reaches the "Checkout" screen that they could potentially discover the additional fees. Even then, any purported disclosure is far from conspicuous:

CLASS ACTION COMPLAINT



37.    The "Delivery Fee" is clearly discounted at checkout and shows a $0.00 charge, confirming the Member's understanding that they will not be charged a delivery fee.

38.    However, beneath the Delivery Fee, Uber Eats also includes a line item titled "Taxes & Other Fees."

CLASS ACTION COMPLAINT

| | |
|---|---|
| Subtotal | $15.96 |
| Promotion | -$5.00 |
| Delivery Fee ⓘ | ~~$3.49~~ $0.00 |
| Taxes & Other Fees ⓘ | ~~$4.48~~ $2.25 |
| **Total** | **$13.21** |

39.     If, and only if, a consumer were to notice and click the small "i" icon would they see a breakdown of the "Other Fees":

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



26    40.    The description of "Service Fee and Other Fees" unambiguously states that these

27  fees are attributable, at least in part, to "delivery services."

28

41.     Accordingly, by Uber's own admission, the "Service Fee and Other Fees" are *de facto* delivery fees which contradict Defendant's representations that Members will not be charged a delivery fee.

42.     Furthermore, even absent this admission, Uber does not provide its Uber Eats customers with any "services" beyond delivery. Any "service" fee is necessarily a delivery fee.

43.     Given that the vast majority of American consumers already expect to pay sales tax on their purchase, Uber further obscures this charge by purposefully bundling the "Service Fee and Other Fees" with state taxes, where they are unlikely to be discovered by reasonable consumers.

44.     Furthering the deception, Uber deducts the Uber One membership benefit (a percentage-based discount) from the "Service Fee and Other Fees," rather than deducting it from the order subtotal. The purpose of this practice is to decrease the total amount of the "Service Fee and Other Fees" line item and, consequently, decrease the likelihood that a reasonable consumer would notice the additional fee when it is hidden with legitimate (and foreseeable) sales tax.

45.     Because the "Service Fee and Other Fees" make up a small percentage of the total order costs after being offset by the Uber One membership benefit, reasonable consumers are likely to attribute the charges entirely to lawful sales tax. Accordingly, reasonable consumers are unlikely to notice and investigate the "Taxes & Other Fees" being charged—especially when they do not expect to pay a Delivery Fee.

46.     Moreover, even if a Member were to notice the line item but fail to click the icon, they would still see a discount, further reinforcing the reasonable belief that any "Other Fees" were delivery fees that had been discounted.

| | |
|---|---|
| Subtotal | $15.96 |
| Promotion | -$5.00 |
| Delivery Fee ⓘ | $3.49 $0.00 |
| Taxes & Other Fees ⓘ | $4.48 $2.25 |
| **Total** | 13.21 |

47.     Given the massive revenues associated with Uber One membership, Uber knows that attracting and retaining Members is essential for its ongoing financial success. Uber also knows that its business would be negatively impacted if Uber One Members understood that the free delivery benefit was illusory.

48.     Accordingly, Uber has a strong incentive to deceive its Members into believing they will receive free delivery, when in reality, they are charged a variety of deceptively named and labeled fees which are merely hidden delivery fees.

49.     Uber had numerous feasible alternatives for designing the Uber Eats App, as well as the Uber One subscription program, that would adequately disclose and explain the true nature of its delivery fees to consumers, yet intentionally chose to employ a design which hides or obscures Uber Eats' delivery pricing, thereby confusing or otherwise deceiving reasonable consumers as to the nature and amount of additional fees being charged and the actual discounts they were receiving as Uber One Members.

50.     Plaintiffs and Class Members reasonably relied on Uber's representations regarding the "$0 Delivery Fee" Uber One membership benefit, when in reality they were continuously charged hidden delivery fees.

51.     It is no secret that Defendant has struggled to become profitable, with its first-ever profit posted in the second quarter of 2023. Uber One is a key component of Defendant's current profitability as it both generates recurring revenue through membership fees and incentivizes customers to use Uber Eats more frequently.

52.     Uber knows that losing predictable income in the form of Uber One membership fees would be detrimental to its business.

53.     Likewise, in the face of increased competition from companies such as Door Dash and Grub Hub, Uber knows that raising its prices could result in a loss of sales. Studies show that over 50% of diners would switch delivery providers if fees rose.[6]

54.     Thus, Uber has incentive to obscure the true costs of its delivery fees and to attract and retain Uber One Members by convincing them that they are receiving a significant discount on their purchases.

## **PLAINTIFFS' FACTS**

### *Plaintiff Todd Brown*

55.     Plaintiff Todd Brown is a resident of Los Angeles, California who has been an Uber One Member since November 2021.

56.     When becoming an Uber One Member, Plaintiff Brown was aware that "$0 Delivery" was a benefit of membership.

57.     Since becoming an Uber One Member, Plaintiff Brown has utilized the Uber Eats "$0 Delivery Fee" benefit on numerous occasions, including as recently as December 7, 2024, when he placed an order with Uber Eats for delivery from SanSai Japanese Grill in Los Angeles, California.

58.     At the time he placed his order, Plaintiff Brown reasonably understood the "$0 Delivery Fee" advertised on the Uber Eats App meant that he would not pay any fees for the delivery of his order.

59.     When ordering food from third-party delivery apps, delivery costs are important to Plaintiff Brown. Accordingly, the promise of free delivery was material to Plaintiff Brown's decision to make a purchase through Uber Eats.

60.     At the time of his purchase, Plaintiff Brown reviewed his order information on

---

[6] https://www.restaurantdive.com/news/over-50-of-diners-would-switch-delivery-providers-if-fees-rose-study-show/619806/

the checkout screen. He noticed that the Delivery Fee charged was "$0.00."

61.    Despite reviewing the checkout screen before submitting his order, Plaintiff Brown did not see any disclosures about additional delivery fees.

62.    Plaintiff Brown reasonably believed that the "Taxes & Other Fees" he paid on the order were lawful sales taxes.

63.    It was only upon reviewing his receipts from prior orders that Plaintiff Brown noticed that he had been charged additional fees for delivery.

64.    Given Uber Eats' representations that his order qualified for the "$0 Delivery Fee" benefit, Plaintiff Brown did not reasonably expect to pay additional delivery fees on his delivery order.

65.    Plaintiff Brown made his purchase in reasonable reliance on the prices disclosed in the Uber Eats App.

66.    As a result of Uber Eats' deceptive business practices, Plaintiff Brown suffered economic injury by paying additional delivery fees contrary to Uber Eats' representations that he would not be charged a delivery fee.

***Plaintiff Ryan Varzandeh***

67.    Plaintiff Ryan Varzandeh is a resident of Los Angeles, California who has been an Uber One Member since January 2021.

68.    When becoming an Uber One Member, Plaintiff Varzandeh was aware that "$0 Delivery" was a benefit of membership.

69.    Since becoming an Uber One Member, Plaintiff Varzandeh has utilized the Uber Eats "$0 Delivery Fee" benefit on numerous occasions, including as recently as December 18, 2024, when he placed an order with Uber Eats for delivery from California Chicken Cafe in Los Angeles, California.

70.    At the time he placed his order, Plaintiff Varzandeh reasonably understood the "$0 Delivery Fee" advertised on the Uber Eats App meant that he would not pay any fees for the delivery of his order.

71.    When ordering food from third-party delivery apps, delivery costs are important to Plaintiff Varzandeh. Accordingly, the promise of free delivery was material to Plaintiff Varzandeh's decision to make a purchase through Uber Eats.

72.    At the time of his purchase, Plaintiff Varzandeh reviewed his order information on the checkout screen. He noticed that the Delivery Fee charged was "$0.00."

73.    Despite reviewing the checkout screen before submitting his order, Plaintiff Varzandeh did not see any disclosures about additional delivery fees.

74.    Plaintiff Varzandeh reasonably believed that the "Taxes & Other Fees" he paid on the order were lawful sales taxes.

75.    It was only upon reviewing his receipts from prior orders that Plaintiff Varzandeh noticed that he had been charged additional fees for delivery.

76.    Given Uber Eats' representations that his order qualified for the "$0 Delivery Fee" benefit, Plaintiff Varzandeh did not reasonably expect to pay additional delivery fees on his delivery order.

77.    Plaintiff Varzandeh made his purchase in reasonable reliance on the prices disclosed in the Uber Eats App.

78.    As a result of Uber Eats' deceptive business practices, Plaintiff Varzandeh suffered economic injury by paying additional delivery fees contrary to Uber Eats' representations that he would not be charged a delivery fee.

***Plaintiff Vaughn Rogers***

79.    Plaintiff Vaughn Rogers is a resident of New York, New York who has been an Uber One Member since January 2021.

80.    When becoming an Uber One Member, Plaintiff Rogers was aware that "$0 Delivery" was a benefit of membership.

81.    Since becoming an Uber One Member, Plaintiff Rogers has utilized the Uber Eats "$0 Delivery Fee" benefit on numerous occasions, including as recently as December 18, 2024, when he placed an order with Uber Eats for delivery from Nan Xiang Xiao Long Bao in New

York, New York.

82.     At the time he placed his order, Plaintiff Rogers reasonably understood the "$0 Delivery Fee" advertised on the Uber Eats App meant that he would not pay any fees for the delivery of his order.

83.     When ordering food from third-party delivery apps, delivery costs are important to Plaintiff Rogers. Accordingly, the promise of free delivery was material to Plaintiff Roger's decision to make a purchase through Uber Eats.

84.     At the time of his purchase, Plaintiff Rogers reviewed his order information on the checkout screen. He noticed that the Delivery Fee charged was "$0.00."

85.     Despite reviewing the checkout screen before submitting his order, Plaintiff Rogers did not see any disclosures about additional delivery fees.

86.     Plaintiff Rogers reasonably believed that the "Taxes & Other Fees" he paid on the order were lawful sales taxes.

87.     It was only upon reviewing his receipts from prior orders that Plaintiff Rogers noticed that he had been charged additional fees for delivery.

88.     Given Uber Eats' representations that his order qualified for the "$0 Delivery Fee" benefit, Plaintiff Rogers did not reasonably expect to pay additional delivery fees on his delivery order.

89.     Plaintiff Rogers made his purchase in reasonable reliance on the prices disclosed in the Uber Eats App.

90.     As a result of Uber Eats' deceptive business practices, Plaintiff Rogers suffered economic injury by paying additional delivery fees contrary to Uber Eats' representations that he would not be charged a delivery fee.

### FED. R. CIV. P. 9(b) ALLEGATIONS
#### (Affirmative and By Omission)

91.     Although Uber is in the best position to know what content it placed on the Uber Eats App, website, or in other marketing materials during the relevant timeframe, Plaintiffs

satisfy the requirements of Rule 9(b) by alleging the following facts with particularity:

92.     **WHO**: Uber unfairly, deceptively, and or misleadingly imposed delivery fees on Uber One Members making purchases through its Uber Eats App.

93.     **WHAT**: Uber's conduct here was, and continues to be, fraudulent because it hid, concealed, obfuscated, or otherwise disguised additional charges—including delivery charges— to consumers purchasing its Uber Eats services. Uber's conduct deceived Plaintiffs and Class Members into believing that their order qualified for "$0 Delivery Fee," when in reality they were being charged undisclosed fees which, by Uber's own admission, were delivery fees. Uber charged delivery fees to all Uber One Members utilizing the "$0 Delivery Fee" benefit when making purchases on the Uber Eats App. Uber failed to adequately disclose the charges to Members, either at the time they purchased their subscriptions to Uber One or at the time they made their individual Uber Eats purchases where they were charged additional delivery fees. Uber knew, or should have known, that it failed to adequately disclose the true price of its delivery services and that this information is material to reasonable consumers, including Plaintiffs and Class Members, in making their purchasing decisions.

94.     **WHEN**: Uber engaged in these unfair, deceptive, or otherwise misleading practices during the putative Class periods and at the time Plaintiffs and Class Members made purchases through the Uber Eats App, prior to and at the time Plaintiffs and Class Members made claims after realizing the unlawful pricing scheme, and continuously throughout the applicable Class periods.

95.     **WHERE**: Uber's unfair and deceptive pricing scheme is uniformly applied to Uber One Members making purchases which qualify for "$0 Delivery Fee" benefit on the Uber Eats App. The Uber Eats App, in addition to Defendant's website(s), advertising, and other marketing materials, similarly failed to explain or otherwise disclose that Uber One Members would still be charged delivery fees even when utilizing Uber Eats' "$0 Delivery Fee" benefit.

96.     **HOW**: Uber hid, obfuscated, or otherwise concealed from consumers its imposition of additional delivery fees by combining the charges with lawful taxes in order to

prevent consumers from discovering the additional charges; deceptively and fraudulently referring to the delivery fees as "Service" and "Other" fees; and utilizing other measures described herein to prevent reasonable consumers from discovering the delivery fees which were charged on orders represented as qualifying for a "$0 Delivery Fee."

97.    **WHY**: Uber engaged in its unfair and deceptive pricing scheme in order to induce Plaintiffs and Class Members to purchase its services, including its Uber One subscription, by representing they would receive Uber Eats' services at a lower price, thus increasing Uber's profits.

98.    **INJURY**: Plaintiffs and Class Members were injured by making purchases on the Uber Eats App in reliance on representations that their purchase qualified for "$0 Delivery Fee," when in fact they were charged additional delivery fees.

## CLASS ACTION ALLEGATIONS

99.    Plaintiffs bring this action individually and as representatives of all those similarly situated, pursuant to Fed. R. Civ. P. 23, on behalf of themselves and the members of the following proposed nationwide class ("Nationwide Class"):

> **During the fullest period allowed by law, all persons in the United States who subscribed to Uber One and made a purchase that was subject to Uber Eats' "$0 Delivery Fee" promotion within the applicable statute of limitations, until the date notice is disseminated.**

100.    Plaintiffs Brown and Varzandeh bring this action individually and as representatives of all those similarly situated, pursuant to Fed. R. Civ. P. 23, on behalf of themselves and the members of the following subclass ("California Class"):

> **During the fullest period allowed by law, all persons in the state of California who subscribed to Uber One and made a purchase that was subject to Uber Eats' "$0 Delivery Fee" promotion within the applicable statute of limitations, until the date notice is disseminated.**

101.    Plaintiff Rogers brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23, on behalf of himself and the members of the following subclass ("New York Class"):

**During the fullest period allowed by law, all persons in the state of New York who subscribed to Uber One and made a purchase that was subject to Uber Eats' "$0 Delivery Fee" promotion within the applicable statute of limitations, until the date notice is disseminated.**

102.    Specifically excluded from these definitions are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel. Plaintiffs reserve the right to amend the Class definition as necessary.

103.    <u>Numerosity</u>: The Members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members is presently unknown, it likely consists of at least thousands of people throughout the United States, as well as in the State of California. The number of Class Members can be determined by sales information and other records. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity. The Class is readily identifiable from information and records in the possession of Defendant.

104.    <u>Typicality</u>: The claims of the representative Plaintiffs are typical in that Plaintiffs, like all Class Members, purchased Defendant's products that were unfairly, deceptively, or misleadingly priced through the imposition of undisclosed delivery and service fees. Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that, *inter alia*, they have incurred or will continue to incur damage as a result of overpaying for a product due to Defendant's business practices. Furthermore, the factual basis of Defendant's misconduct is common to all Class Members because Defendant has engaged in systematic deceptive and fraudulent behavior that was deliberate and results in the same injury to all Class Members.

105.    <u>Commonality</u>: Common questions of law and fact exist as to all Members of the Class. These questions predominate over questions that may affect only individual Class Members because Defendant has acted on grounds generally applicable to the Class. Such common legal or factual questions include, *inter alia*:

(a)    Whether Defendant created, designed, reviewed, and/or approved the design and

content of the Uber Eats App;

   (b)   Whether Defendant adequately disclosed its policy of charging delivery fees on every order placed through the Uber Eats App;

   (c)   Whether Defendant uniformly charged additional delivery fees on every order subject to the "$0 Delivery Fee" promotion;

   (d)   Whether the "$0 Delivery Fee" promotion would deceive a reasonable consumer;

   (e)   Whether Defendant's violations of the law were committed knowingly and/or intentionally;

   (f)   Whether Plaintiffs and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

   (g)   Whether Plaintiffs and Class Members are entitled to damages, treble damages, civil penalties, punitive damages, and/or injunctive relief.

106.   <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of Class Members. They have no interests antagonistic to those of Class Members. Plaintiffs retained attorneys experienced in the prosecution of class actions, including those alleging unfair and deceptive trade practices, and Plaintiffs intend to prosecute this action vigorously.

107.   <u>Injunctive/Declaratory Relief</u>: The elements of Rule 23(b)(2) are met. Defendant will continue to commit the unlawful practices alleged herein, and Plaintiffs and Class Members will continue to be deceived by Defendant's deceptive practices. Defendant has acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief, public injunctive relief, and corresponding declaratory relief are appropriate respecting the Class as a whole. Injunctive relief, and specifically public injunctive relief, is necessary in this action.

108.   <u>Predominance and Superiority</u>: Plaintiffs and Class Members have all suffered and will continue to suffer risk of harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost

CLASS ACTION COMPLAINT

of litigating their claims prohibitively high given the average price point of the Products and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

109.    Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

110.    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class appropriate.

## DEFENDANT'S UNCONSCIONABLE ARBITRATION CLAUSE

111.    Throughout the applicable Class period, Defendant pushed an adhesive contract on Plaintiffs and Class Members, requiring mandatory bilateral arbitration and waiver of the right to proceed on a class basis. Defendant published this adhesive contract in its "Terms of Service" on the Uber Eats App.

112.    Defendant's true purpose was to effectively skirt liability for violations of consumer and employment law. Defendant banked on the longstanding observation that the "realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).

113.    Due to that widely-held observation, California law has long held that class action waivers in adhesive contracts are unenforceable. *Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005). But under U.S. Supreme Court precedent, the Federal Arbitration Act ("FAA") preempts such state laws to the extent they interfere with the "speed," "efficiency," and

"informality" embodied in one-on-one, bilateral arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).

114. Defendant sought to take advantage of this preemption. As recently as December 1, 2021, Defendant's "Terms of Service" promised the bilateral arbitration discussed in *Concepcion*.[7] But Defendant did not expect any appreciable number of claimants to actually seek to arbitrate consumer disputes on an individual basis.

115. In 2020, thousands of consumers called Defendant's bluff, filing claims alleging discrimination before the American Arbitration Association ("AAA"). But Defendant balked at the prospect of being required to pay the arbitration fees it had agreed to pay. Filing an unsuccessful lawsuit against the AAA, "Uber moved for a preliminary injunction . . . enjoining AAA from issuing any additional invoices[.]" *Uber Techs., Inc. v. Am. Arb. Ass'n, Inc.*, 204 A.D.3d 506, 508 (N.Y. App. Ct. 2022). A New York appellate court not only affirmed the denial of this request, but explained how Defendant's actions led to this result:

> The balance of the equities weighs in favor of AAA. While Uber is trying to avoid paying the arbitration fees associated with 31,000 nearly identical cases, it made the business decision to preclude class, collective, or representative claims in its arbitration agreement with its consumers, and AAA's fees are directly attributable to that decision[.]

*Id*. at 510.

116. Defendant responded by amending the Uber Terms of Service in ways that remove the right to speedy, informal, bilateral arbitration.

117. The new Uber Terms of Service still include a class action waiver, but no longer promise bilateral arbitration. Under Section 3.a of the new Terms, if more than 50 claimants file "similar" arbitration demands within 180 days and are represented by the same counsel, they have no right to bilateral arbitration.[8]

---

[7] https://web.archive.org/web/20211130132141/https://www.uber.com/legal/en/document/?name =general-terms-of-use&country=united-states&lang=en (last visited Dec. 19, 2024).

[8] Uber Terms of Service, last modified: 8/19/2024, §§ 3.a, 3.b, https://www.uber.com/legal/en/document/?name=general-terms-of-use&country=united-states&lang=en (last visited Dec. 30, 2024).

118.    Under the current Uber Terms of Service, such claimants must instead proceed in collective "batches,"[9] or opt out of arbitration altogether while maintaining the class action waiver for any claim filed in court.[10] Simply put, these provisions remove the right to bilateral arbitration.

119.    By banning claimants from proceeding as a class, these terms violate California's *Discover Bank* rule. And, because these Terms remove the right to bilateral arbitration, the reasoning of *Concepcion* does not apply. Therefore, Defendant's adhesive class action waiver is unconscionable and unenforceable.

120.    The Uber Terms of Service are also unconscionable for other reasons, including vagueness, lack of mutuality, and interference with choice of counsel.

121.    To illustrate, Section 3.a of the current Terms prohibit individual claimants from pursuing bilateral arbitration under various conditions. One such condition is if the claimant is represented by the same counsel as other claimants who filed claims of a "substantially similar nature . . . within 180 days" of the claimant's own filing:

> a. <u>Mass Action Waiver</u>: Any and all disputes, claims, or controversies between the parties shall be resolved only in individual arbitration. The parties expressly waive the right to have any dispute, claim, or controversy brought, heard, administered, resolved, or arbitrated as a mass action, and neither an arbitrator nor an arbitration provider shall have any authority to hear, arbitrate, or administer any mass action . . . . The parties agree that the definition of a "Mass Action" includes, but is not limited to, instances in which you or Uber are represented by a law firm or collection of law firms that has filed 50 or more arbitration demands of a substantially similar nature against the other party within 180 days of the arbitration demand filed on your or Uber's behalf, and the law firm or collection of law firms seeks to simultaneously or collectively administer and/or arbitrate all the arbitration demands in the aggregate.[11]

122.    This clause unconscionably seeks to interfere with claimants' choice of counsel by tying the "Mass Action" prohibition the counsel selected. It is also one-sided and lacking in mutuality. Defendant, for example, is not prohibited from using the same counsel to defend more

---

[9] *Id.*, § 3.c.

[10] *Id.*, § 3.b.

[11] *Id.*

than 50 claims "substantially similar [in] nature."[12] Only *individual claimants'* choice of counsel is impaired in this manner.

123.    To be sure, Defendant asserts that the "Mass Action" clause applies only if claimants' counsel "seeks to simultaneously . . . administer and/or arbitrate all the arbitration demands[.]"[13] But this ban on "simultaneous" arbitrations only worsens the problem. It means each claimant may proceed without delay only if other claimants delay their own claims, thereby running the risk that their respective statute of limitations will expire. The only way to avoid this risk is for claimants to avoid choosing counsel who represent 49 other similarly-situated claimants. Further, this preference for delay over "simultaneous" administration is at odds with the purpose of bilateral arbitration, which is meant to be quick and informal.

124.    Defendant also drafted Section 3.a so that its scope is intentionally vague. For instance, "the definition of a 'Mass Action' includes, *but is not limited to*," situations where claimants are represented by the same counsel.[14] By refusing to provide a precise definition of "Mass Actions," this clause creates uncertainty as to whether any claimant has a right to bilateral arbitration.

125.    Next, the Uber Terms of Service do away with any pretense of an enforceable right to bilateral arbitration. The Terms state that if more than 50 consumers have filed similar claims, their claims will be combined and a three-arbitrator panel will decide whether they "violated" Section 3.a:

> b. Dispute Procedure: Notwithstanding any provision to the contrary in the applicable arbitration provider's rules, the arbitrator shall be empowered to determine whether the party bringing any claim has filed a Mass Action in violation of the Mass Action Waiver.[15]

If there is found to be a so-called "Mass Action"—meaning more individual claims than

---

[12] *Id.*

[13] *Id.*

[14] *Id.* (emphasis added)

[15] *Id.*, § 3.b.

Defendant cares to arbitrate on a bilateral basis—the Class Members have no enforceable right to arbitrate. Instead, Defendant may opt out of arbitration and proceed in court.[16]

126.    The opt-out process is also one-sided in Defendant's favor and interferes with Class Members' right to communicate through counsel. It states that "Uber may opt out of arbitration by sending written notice of its intention to opt out to the arbitration provider and to you *or your attorney, agent, or representative if you are represented*."[17] Defendant is not constrained to any particular form of notice. By contrast, Class Members may only opt out by physically mailing a "written notice" that "must be signed by you, and not any attorney, agent, or other representative":

> You may opt out of arbitration by providing written notice of your intention to opt out to the arbitration provider and to Uber Technologies, Inc., Attn: Legal Department, 1725 3rd Street, San Francisco, CA 94158 via USPS Priority Mail or hand delivery. This written notice must be signed by you, and not any attorney, agent, or other representative of yours. Uber may opt out of arbitration by sending written notice of its intention to opt out to the arbitration provider and to you or your attorney, agent, or representative if you are represented.[18]

Further underscoring this clause's one-sided nature, "the ability to opt out of arbitration . . . only applies if the arbitrator or panel of arbitrators determines that *you*"—the individual claimant— "have violated the Mass Action Waiver."[19]

127.    If Class Members attempt to proceed in arbitration, they may not do so bilaterally. Instead, they are forced into an extremely formalized proceeding in which Defendant may require a "Special Master" to decide the merits of the claims on a non-bilateral, aggregate basis, including:

> 4. Whether claimants are barred from proceeding with their claims based on a prior settlement agreement, violation of these Terms, or expiration of the statute

---

[16] *Id.*

[17] *Id.* (emphasis added)

[18] *Id.*

[19] *Id.* (emphasis added)

of limitations;

. . .

8. Any disputes regarding legal or factual issues common to all claims.[20]

128.    Under Section 3.c, any "legal or factual issues common to all claims" may be decided on an aggregate basis. This clause allows dispositive questions to be resolved in the aggregate rather than on a bilateral basis.

129.    This mandated "'aggregation' of arbitration claims" is not entitled to FAA preemption of state law, because it is not "arbitration as envisioned by the FAA." *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 690 (9th Cir. 2024).

130.    As a result, Defendant may not enforce their class action waiver without violating California law holding that such waivers are unconscionable.

131.    Due to the class action waiver, the procedural morass imposed by Defendant's batching procedure, the preference for delay over "simultaneous" claims administration, the interference with Class Members' choice of counsel, and the various one-sided provisions, the Uber Terms of Service are permeated by unconscionability and should not be enforced.

## COUNT I
### Violation of the California Consumer Legal Remedies Act
### ("CLRA"), Civil Code §§ 1750, *et seq.*
### (On Behalf of Plaintiffs Brown and Varzandeh and the California Class)

132.    Plaintiffs Brown and Varzandeh bring this count individually and on behalf of the California Class and repeat and re-allege all previous paragraphs as if fully included herein.

133.    The conduct described herein took place in the State of California and constitutes unfair methods of competition or deceptive acts or practices in violation of the Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq*.

134.    The CLRA applies to all claims of all California Class Members because the conduct which constitutes violations of the CLRA by Defendant occurred within the State of

---

[20] *Id.*, § 3.c.

California.

135.    Plaintiffs Brown and Varzandeh and California Class Members are "consumers" as defined by Civil Code § 1761(d).

136.    Uber provides "services" as defined by Civil Code § 1761(b).

137.    Plaintiffs Brown and Varzandeh and the California Class Members' purchases from Defendant's Uber Eats App are "transactions" as defined by Civil Code § 1761(e).

138.    As set forth below, the CLRA deems the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which does result in the sale or lease of goods or services to any consumer as unlawful.

    (a)    "Advertising goods or services with intent not to sell them as advertised." Civil Code § 1770(a)(9);

    (b)    "Making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Civil Code § 1770(a)(13); and

    (c)    "Advertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited to, shelf tags, displays, and media advertising, in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product." Civil Code § 1770(a)(20).

139.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Civil Code §§ 1770(a)(9), (a)(13), and (a)(20) when it represented, through its advertising and other express representations, its services with intent not to sell them at the advertised price and without the legally required disclosures.

140.    As detailed in the body of this Complaint, Defendant has repeatedly engaged in conduct deemed a violation of the CLRA and has made representations regarding the price of its delivery services which are false due to the uniform imposition of the hidden delivery fees

described herein. Indeed, Defendant concealed the true price of its services, and the true nature of the "Taxes & Other Fees" it was charging on each purchase, from Plaintiffs Brown and Varzandeh and California Class Members.

141.    No reasonable consumer would expect the "Taxes & Other Fees" charged by Defendant to include delivery fees in addition to the itemized "Delivery Fee," nor would they expect to be charged delivery fees when Defendant advertised a "$0 Delivery Fee."

142.    Defendant's misrepresentations were material to Plaintiffs Brown and Varzandeh's and California Class Members' decision to purchase Defendant's services.

143.    Defendant willfully employed a scheme designed to conceal its additional delivery fees, and did so willfully, wantonly, and with reckless disregard for the truth.

144.    As a result of Defendant's omissions and misrepresentations, Plaintiffs Brown and Varzandeh and California Class Members purchased and paid for products that did not conform to Defendant's advertised prices, and they were deprived of the benefit of their bargain and spent money on products that they would not have purchased, or would have purchased on different terms, had they known the true facts regarding the delivery fees Defendant assessed.

145.    These business practices are misleading and/or likely to mislead consumers and should be enjoined.

146.    Pursuant to Cal. Civ. Code § 1782, Plaintiffs Brown and Varzandeh notified Defendant in writing by certified mail sent on December 27, 2024 of their violations of § 1770 described above. Plaintiffs Brown and Varzandeh's letter demanded that Defendant correct the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to do so. If Defendant does not agree to rectify the problems identified and give notice to all affected consumers within 30 days of the date of written notice, Plaintiffs Brown and Varzandeh will amend this Complaint to seek actual, punitive and statutory damages, as appropriate.

147.    A declaration establishing that venue in this District is proper pursuant to Cal. Civ. Code § 1780(d) is attached hereto as Exhibit A.

148.    In accordance with Civil Code § 1780(a), Plaintiffs Brown and Varzandeh and the other California Class Members seek injunctive and equitable relief for Defendant's violations of the CLRA, including an injunction to enjoin Defendant from continuing its deceptive sales practices.

149.    Pursuant to California Civil Code § 1780(a)(1)-(5) and § 1780(e), Plaintiffs Brown and Varzandeh seek an order enjoining Defendant from the unlawful practices described above, a declaration that Defendant's conduct violates the Consumers Legal Remedies Act, money damages, reasonable attorneys' fees and litigation costs, and any other relief the Court deems proper under the CLRA.

**<u>COUNT II</u>**
**Violation of the California False Advertising Law ("FAL")**
**California Business and Professions Code §§ 17500, *et seq*.**
**On Behalf of Plaintiffs Brown and Varzandeh and the California Class)**

150.    Plaintiffs Brown and Varzandeh bring this count individually and on behalf of the California Class and repeat and re-allege all previous paragraphs as if fully included herein.

151.    The conduct described herein took place within the State of California and constitutes deceptive or false advertising in violation of California Business and Professions Code § 17500.

152.    Plaintiffs Brown and Varzandeh and Defendant are "person[s]" as defined by California Business and Professions Code § 17506.

153.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

154.    At all times relevant, Defendant's advertising and the listing of prices for its services was false, misleading, and likely to deceive the reasonable consumer and the public by representing that Plaintiffs Brown and Varzandeh and California Class Members' orders

qualified for "$0 Delivery Fee," when in reality Defendant assessed additional hidden delivery fees on the orders.

155.    Defendant engaged in the false and/or misleading advertising and marketing alleged herein with the intent to directly or indirectly mislead consumers as to the cost of their purchases.

156.    At the time of its misrepresentations, Defendant was aware that all consumers would be charged additional delivery fees. Defendant concealed and omitted and failed to disclose this information to Plaintiffs Brown and Varzandeh and California Class Members.

157.    In making and publicly disseminating the statements and/or omissions alleged herein, Defendant knew or should have known that the statements and/or omissions were false or misleading, and therefore violated California Business and Professions Code § 17500 et seq.

158.    Plaintiffs Brown and Varzandeh have standing to pursue claims under the FAL as they reviewed and relied on Defendant's advertising, representations, and marketing materials regarding Uber Eats' services on the Uber Eats App when making their purchases.

159.    Plaintiffs Brown and Varzandeh and California Class Members have suffered injury in fact and have lost money and/or property as a result of Defendant's false advertising as set forth herein. Plaintiffs Brown and Varzandeh and California Class Members have been injured because they paid delivery fees despite Defendant's representations that they would be charged "$0 Delivery Fee," and Defendant benefitted from their overpayment.

160.    Defendant's false and misleading advertising presents a continuing threat to consumers, as Defendant continues to add the hidden fees. This will continue to mislead consumers as to the real price of Uber Eats delivery.

161.    As a direct and proximate result of Defendant's actions, as set forth herein, Defendant have received ill-gotten gains and/or profits, including but not limited to money from Plaintiffs Brown and Varzandeh and California Class Members who paid an undisclosed delivery fee for Uber Eats' services, increasing the advertised price of the services.

162.    Plaintiffs Brown and Varzandeh and California Class Members seek injunctive

1    relief, restitution, and disgorgement of any monies wrongfully acquired or retained by Defendant

2    and by means of its deceptive or misleading representations, including monies already obtained

3    from Plaintiffs Brown and Varzandeh and California Class Members as provided for by the

4    California Business and Professions Code § 17500.

**COUNT III**
**Violations of the California Unfair Competition Law**
**("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiffs Brown and Varzandeh and the California Class)**

8    163.    Plaintiffs Brown and Varzandeh bring this count on behalf of themselves and the

9    California Class and repeat and re-allege all previous paragraphs as if fully included herein.

10    164.    Defendant is a "person[s]" as defined by Cal. Bus. & Prof. Code § 17201.

11    165.    Unfair competition is defined by Cal. Bus. & Prof. Code § 17200 as

12    encompassing several types of business "wrongs," four of which are at issue here: (1) an

13    "unlawful" business act or practice; (2) and "unfair" business act or practice; (3) a "fraudulent"

14    business act or practice; and (4) "unfair, deceptive, untrue or misleading advertising." The

15    definitions of § 17200 are drafted in the disjunctive, meaning each of these "wrongs" operates

16    independently from the others.

17    166.    Because Defendant has violated Cal. Bus. & Prof. Code § 17500 et seq.,

18    Defendant has violated California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200

19    et seq., which provides a cause of action for an "unlawful" business act or practice perpetrated

20    on members of the California public.

21    167.    Defendant had other reasonably available alternatives to further its legitimate

22    business interest, other than the conduct described herein, such as raising their menu prices.

23    168.    Plaintiffs Brown and Varzandeh and California Class members reserve the right

24    to allege other violations of law, which constitute other unlawful business practices or acts, as

25    such conduct is ongoing and continues to this date.

26    169.    Defendant's actions and representations constitute an "unfair" business act or

27    practice under Cal. Bus. & Prof. Code § 17200 in that Defendant's conduct is substantially

28

injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

170.    Without limitation, it is an unfair business act or practice for Defendant to knowingly or negligently represent to the consuming public that their orders are subject to a "$0 Delivery Fee" when in reality they are uniformly charged additional hidden delivery fees.

171.    Such conduct by Defendant is "unfair" because it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that consumers are led to believe that Defendant's prices are lower than they actually are once the additional delivery fees are added to the consumer's bill.

172.    Defendant had other reasonably available alternatives to further its legitimate business interest, other than the conduct described herein, such as raising its stated menu prices.

173.    Plaintiffs Brown and Varzandeh and California Class Members could not have reasonably avoided the injury suffered by each of them.

174.    Defendant's claims and misleading statements were false and/or likely to deceive the consuming public within the meaning of Cal. Bus. & Prof. Code § 17200 et seq. Defendant engaged in fraudulent acts and business practices by knowingly or negligently representing to Plaintiffs Brown and Varzandeh and other similarly situated consumers, whether by conduct, orally, or in writing by intentionally advertising their prices to be less than what Defendant actually intends to charge the consumer.

175.    Defendant knowingly and fraudulently concealed the delivery fees among lawful sales taxes in order to prevent Plaintiffs Brown and Varzandeh and Class Members from discovering that the prices of Uber Eats' services were uniformly higher than advertised. It was unlikely, if not impossible, that Plaintiffs Brown and Varzandeh and California Class Members who purchased Defendant's products would discover the imposition of the hidden fees prior to their purchase. Thus, Plaintiffs Brown and Varzandeh and California Class Members could not have reasonably avoided the harm they suffered.

176.    Plaintiffs Brown and Varzandeh and Class Members who placed orders with Uber Eats suffered an injury by virtue of paying for services for which Defendant misrepresented the actual price and/or omitted the true nature of the additional fees it charged to consumers in conjunction with their purchases.

177.    The gravity of the harm suffered by Plaintiffs Brown and Varzandeh and Class Members who purchased the deceptively priced Uber Eats services outweighs any legitimate justification, motive or reason for charging the hidden fees. Accordingly, Defendant's actions are immoral, unethical, unscrupulous and offend the established public policies as set out in federal regulations and are substantially injurious to Plaintiffs Brown and Varzandeh and California Class Members.

178.    As a result of Defendant's unlawful, unfair and fraudulent acts and practices, Plaintiffs Brown and Varzandeh, on behalf of themselves and all others similarly situated, and as appropriate, on behalf of the general public, seek injunctive relief prohibiting Defendant from continuing these wrongful practices, and such other equitable relief, including full restitution of all improper revenues and ill-gotten profits derived from Defendant's wrongful conduct to the fullest extent permitted by law.

**COUNT IV**
**Violations of the New York Deceptive Trade Practices Act,**
**New York Gen. Bus. Law §§ 349, *et seq.***
**(On Behalf of Plaintiff Rogers and the New York Class)**

179.    Plaintiff Rogers brings this count on behalf of himself and on behalf of the New York Class and hereby repeats and re-alleges all previous paragraphs, as if fully included herein.

180.    The New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

181.    Defendant misleadingly, inaccurately, and deceptively advertises and markets its Uber Eats services to consumers.

182.    Defendant's improper consumer-oriented conduct—including falsely advertising

"$0 Delivery Fee" to Members of its Uber One program and otherwise obscuring the true costs of its Uber Eats delivery services—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Class Members to purchase and pay a premium for Defendant's Uber Eats services (including Uber One membership) when they otherwise would not have. Defendant made the untrue and/or misleading statements, omissions, and representations willfully, wantonly, and with reckless disregard for the truth.

183.    Plaintiff and the New York Class Members have been injured inasmuch as they paid a premium for services that—contrary to Defendant's representations—were subject to numerous undisclosed fees. Accordingly, Plaintiff and the New York Class Members received less than what they bargained and/or paid for.

184.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Class Members have been damaged thereby.

185.    As a result of Defendant's recurring, unlawful and deceptive acts and practices, Plaintiff and the New York Class Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

186.    In addition, Plaintiff and New York Class Members seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

187.    Finally, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**COUNT V**
**Violations of the New York Deceptive Trade Practices Act,**
**New York Gen. Bus. Law §§ 350, *et seq.***
**(On Behalf of Plaintiff Rogers and the New York Class)**

188.    Plaintiff Rogers brings this count on behalf of himself and on behalf of the New York Class and hereby repeats and re-alleges all previous paragraphs, as if fully included herein.

189.    The N.Y. Gen. Bus. Law § 350 prohibits false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in the state of New York.

190.    Defendant's advertisements contain untrue and materially misleading statements and omissions concerning Defendant's services inasmuch as they misrepresent that Uber One Members will be charged a "$0 Delivery Fee," when in reality Plaintiff's and New York Class Members' Uber Eats orders were subject to numerous additional undisclosed fees, including fees explicitly charged for delivery.

191.    Defendant's advertisements were materially misleading because they were intended to deceive consumers about the actual costs of Uber Eats delivery services and to deceive consumers about the true nature of any benefits and/or discounts they would receive as members of the Uber One subscription program.

192.    Plaintiff and New York Class Members relied upon Defendant's advertising and paid a premium for their Uber One memberships and the Uber Eats delivery services purchased in conjunction with those memberships.

193.    Defendant's advertising induced Plaintiff and New York Class Members to purchase Uber One memberships and purchase Uber Eats delivery services.

194.    Plaintiff and New York Class Members were misled and deceived into paying for Uber One subscriptions that did not provide the benefits advertised and, furthermore, were misled and deceived into paying more for Uber Eats delivery services than they reasonably expected to pay based on Defendant's false, misleading and deceptive advertising.

195.    Defendant made the untrue and/or misleading statements, omissions, and representations willfully, wantonly, and with reckless disregard for the truth.

196.    Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

197.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing services through the Uber Eats App were and continue to be exposed to Defendant's material

misrepresentations.

198.    As a result of Defendant's recurring, unlawful and deceptive acts and practices, Plaintiff and New York Class Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

199.    In addition, Plaintiff and New York Class Members seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

200.    Finally, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT VI
### Fraudulent Misrepresentation
**(On Behalf of Plaintiffs and the Nationwide Class, or, in the Alternative, the California Class)**

201.    Plaintiffs bring this count on behalf of themselves and on behalf of the Nationwide Class, or, in the alternative, the California Class (in this count referred to as the "Class" Members), and hereby repeat and re-allege all previous paragraphs, as if fully included herein.

202.    At all times during the relevant time period, Defendant represented that Plaintiffs and Class Members' purchases would qualify for "$0 Delivery Fee."

203.    Defendant knew that this representation was false due to its uniform imposition of additional delivery and service fees in addition to the retail price.

204.    At all times relevant to this action, Defendant designed and otherwise controlled the Uber Eats App, including how all promotions and fees were communicated to consumers.

205.    Although Defendant could have clearly disclosed the additional fees, it knowingly concealed them among other lawful taxes in order to prevent consumers from discovering the true price of its services.

206.    Defendant intentionally concealed and/or failed to disclose material facts for the purpose of inducing Plaintiffs and Class Members to act thereon.

207.    Plaintiffs and Class Members justifiably acted or relied upon the concealed and/or nondisclosed facts to their detriment, as evidenced by their purchase of Defendant's services.

208.    Plaintiffs and Class Members were damaged as a result of Defendant's misrepresentations by paying a uniformly higher price than they reasonably expected to pay based on Defendant's representations.

209.    Plaintiffs and Class Members are entitled to all relief the Court deems proper as a result of Defendant's actions described herein.

**COUNT VII**
**Fraudulent Inducement**
**(On Behalf of Plaintiffs and the Nationwide Class, or, in the Alternative, the California Class)**

210.    Plaintiffs bring this count on behalf of themselves and on behalf of the Nationwide Class, or, in the alternative, the California Class (in this count referred to as the "Class" Members), and hereby repeat and re-allege all previous paragraphs, as if fully included herein.

211.    At all times during the relevant time period, Defendant represented that as a benefit of entering into an Uber One subscription contract, Plaintiffs and Class Members would qualify for "$0 Delivery Fee" on eligible purchases.

212.    In reality, Defendant concealed the fact that Uber One Members who utilized the "$0 Delivery Fee" benefit would still be subject to additional delivery fees, in addition to de facto delivery fees misleadingly or deceptively labeled as "service" or "other" fees.

213.    Defendant knew that this representation was false due to its uniform imposition of additional delivery and service fees, even on orders where Uber One Members purportedly qualified for the "$0 Delivery Fee" benefit.

214.    At all times relevant to this action, Defendant designed and otherwise controlled the Uber Eats App and all of its related marketing and advertising, including how all information regarding Uber One membership benefits.

215.    Although Defendant could have clearly disclosed the additional fees, it knowingly concealed them in order to prevent Members from discovering the true nature of their

Uber One benefits.

216.    Defendant advertised the "$0 Delivery Fee" benefit with the intention of inducing Plaintiffs and Class Members to enter into an Uber One subscription.

217.    Plaintiffs and Class Members justifiably acted or relied upon Defendant's misrepresentations regarding the "$0 Delivery Fee" benefit, as well as other concealed and/or nondisclosed facts related to their Uber One membership benefits, to their detriment, as evidenced by their entry into a contract with Defendant for an Uber One subscription.

218.    Plaintiffs and Class Members were damaged as a result of Defendant's misrepresentations by paying a monthly subscription fee for a benefit that was falsely represented or advertised.

219.    Plaintiffs and Class Members are entitled to all relief the Court deems proper as a result of Defendant's actions described herein.

<u>COUNT VIII</u>
**Unjust Enrichment/Quasi-Contract**
**(On Behalf of Plaintiffs and the Nationwide Class, or, in the Alternative,**
**the California Class)**

220.    Plaintiffs bring this count on behalf of themselves and on behalf of the Nationwide Class, or, in the alternative, the California Class (in this count referred to as the "Class" Members), and hereby repeat and re-allege all previous paragraphs, as if fully included herein.

221.    Defendant's unfair and unlawful contract includes, among other things, making false and misleading representations and omissions of material facts, as set forth in this Complaint. Defendant's acts and business practices offend the established public policy of California, as there is no societal benefit from false advertising, only harm. While Plaintiffs and Class Members were harmed at the time of purchase, Defendant was unjustly enriched by its misrepresentations and omissions.

222.    Plaintiffs and Class Members were harmed when purchasing Defendant's services as a result of Defendant's material representations and omissions regarding its price, as described in this Complaint. Plaintiffs and each Class Member purchased Defendant's products

at a higher price than advertised on Defendant's menu and other marketing and advertising statements. Plaintiffs and Class Members have suffered injury in fact and lost money as a result of paying the higher price they paid for the products as a result of Defendant's unlawful, unfair, and fraudulent business practices.

223.    Defendant's conduct allows Defendant to knowingly realize substantial revenues from selling its services at the expense of, and to the detriment of, Plaintiffs and Class Members, and to Defendant's benefit and enrichment. Defendant's retention of these benefits violates fundamental principles of justice, equity, and good conscience.

224.    Plaintiffs and Class Members confer significant financial benefits and pay substantial compensation to Defendant for its services, which are not actually priced as Defendant represents.

225.    Under common law principles of unjust enrichment and quasi-contract, it is inequitable for Defendant to retain the benefits conferred by Plaintiffs' and Class Members' overpayments.

226.    Plaintiffs and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and Class Members may seek restitution.

## COUNT IX
**(Declaratory Judgment Pursuant to 28 U.S.C. § 2201)**
**(On Behalf of Plaintiffs and the Nationwide Class, or, in the Alternative, the California Class)**

227.    Plaintiffs bring this count on behalf of themselves and on behalf of the Nationwide Class, or, in the alternative, the California Class (in this count referred to as the "Class" Members), and hereby repeat and re-allege all previous paragraphs, as if fully included herein.

228.    An actual, present, and justiciable controversy has arisen between Plaintiffs and Defendant concerning the legality of the Uber Terms of Service and their impact on Plaintiffs' maintenance of the present action.

229.    The Uber Terms of Service constitute an adhesive contract that imposes a class

- 41 -

action waiver on Plaintiffs and Class Members, in violation of California law and the laws of many other states.

230.    Depending on the Class Members' choice of counsel and other vaguely defined factors, the Uber Terms of Service remove any right to bilateral arbitration. In its place, the Uber Terms of Service require "batching" of claims and a Special Master process in which the merits of many claims are decided in the aggregate.

231.    These "batching" and "Special Master" clauses, which Defendant concocted, are not "arbitration" as envisioned by the FAA. These aggregated procedures are not entitled to preemption of state unconscionability laws.

232.    Further, the Uber Terms of Service are rife with one-sided provisions that lack mutuality. The Terms also seek to interfere with Plaintiffs' choice of counsel while imposing no remotely similar barrier on Defendant's choice of counsel.

233.    Plaintiffs seek a declaration that the arbitration terms contained within Uber Terms of Service are unconscionable, that unconscionability so permeates the Terms that the offending provisions cannot be severed, and, therefore, these Terms are unenforceable against Plaintiffs and Class Members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

A.    Certify the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    Name Plaintiffs as Class Representatives of the Classes;

C.    Name Plaintiffs' counsel as Class Counsel for the Classes;

D.    Award damages, including compensatory, exemplary, and statutory damages, to Plaintiffs and the Classes in an amount to be determined at trial;

E.    Permanently enjoin Defendant from engaging in the wrongful and unlawful conduct alleged herein;

F.   Award Plaintiffs and the Classes their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

G.   Award Plaintiffs and the Classes pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

H.   Award such further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

DATED:  December 30, 2024                     Respectfully submitted,

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLP**

**/s/ Alex Straus**
Alex Straus (SBN 321366)
astraus@milberg.com
280 S. Beverly Drive, PH Suite
Beverly Hills, CA 90212
(866) 252-0878 (phone)
(615) 921-6501 (fax)

Erin Ruben*
Karl Amelchenko*
900 W. Morgan St.
Raleigh, NC 27603
T: 865-247-0080
F: 865-522-0049
eruben@milberg.com
kamelchenko@milberg.com

Jonathan B. Cohen*
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: 865-247-0080
F: 865-522-0049
jcohen@milberg.com

Daniel Bryson*
P.O. Box 12638
Raleigh, NC 27605
T : 919-600-5000
F : 919-815-4843
dbryson@milberg.com

*Motion to be admitted *pro hac vice* forthcoming

- 43 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT